UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-62099-GAYLES/STRAUSS

DWIGHT PRUDE,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 15] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 17]. This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters [DE 2]. I have reviewed both motions, the administrative record [DE 11], and all other filings in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 15] be **DENIED** and that Defendant's Motion [DE 17] be **GRANTED**.

## I.      BACKGROUND & PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on August 14, 2020, alleging a disability onset date of January 31, 2017 ("Alleged Onset Date"). Tr. 31, 95, 105, 196-97. Plaintiff, who was born in 1963, alleged disability on account of post traumatic stress disorder ("PTSD") and back disorders. Tr. 82, 282. His claim for benefits was denied initially and upon reconsideration. *See* Tr. 81-105. On January 12, 2022, Plaintiff appeared with counsel at a telephonic hearing before an Administrative Law Judge ("ALJ"); a vocational expert ("VE") also appeared and

testified at the hearing.  Tr. 45-69.  On February 28, 2022, the ALJ issued her decision, finding that Plaintiff was not disabled under the Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision).  Tr. 31-39.  On September 26, 2022, the Appeals Council denied Plaintiff's request for review, Tr. 1-4, thereby leaving the ALJ's decision as the final decision of the Commissioner.  Consequently, on November 14, 2022, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.    <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.    DISCUSSION

**A.  THE SEQUENTIAL EVALUATION**

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. § 404.1520(d). If so, the ALJ will

find the claimant disabled without considering age, education, and work experience.  *Id.*  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. § 404, subpt. P, app. 2.  The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. § 404.1569.  The guidelines

are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. § 404.1569. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled between the Alleged Onset Date and the date of the ALJ's decision. Tr. 39. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 31-33. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 33.

Next, at step two, the ALJ found that Plaintiff had the severe impairment of disorder of the lumbar spine.  Tr. 34.  The ALJ also discussed Plaintiff's mental impairment of PTSD at step two, finding it to be nonsevere.  Tr. 34.  The ALJ noted that she considered the "paragraph B" criteria – the four broad areas of mental functioning – in finding that Plaintiff's mental impairment was not severe.  Tr. 34.  She assessed no limitation in two areas of mental functioning (understanding, remembering, or applying information & adapting or managing oneself) and mild limitations in the other two areas (interacting with others & concentrating, persisting, or maintaining pace).  Tr. 34.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 35.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to frequent climbing of ramps and stairs. He can occasionally climb ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. He must avoid extreme cold and can tolerate frequent exposure to heat. He can tolerate frequent exposure to unprotected heights, moving mechanical parts, and operating heavy machinery.

Tr. 35.  As part of this assessment, the ALJ noted that she considered all of Plaintiff's symptoms and the extent to which his symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  Tr. 35.  Additionally, the ALJ stated that she considered the medical opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c.  Tr. 35.  She then proceeded to discuss the evidence of record in conjunction with discussing Plaintiff's RFC.  Tr. 36-38.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform his past relevant work.  Tr. 38.  Therefore, the ALJ considered Plaintiff's age, education, work experience,

and RFC to determine whether a significant number of jobs, that Plaintiff could perform, exist in the national economy.  Tr. 38-39.  Relying on the VE's testimony, the ALJ identified four jobs – which collectively have more than 800,000 positions nationwide – that Plaintiff is able to perform. *See* Tr. 39.  As a result, the ALJ found that Plaintiff was not disabled from the Alleged Onset Date through the date of the ALJ's decision.  Tr. 39.

## C.  ANALYSIS

Plaintiff contends that the ALJ erred in formulating Plaintiff's RFC by not including: (1) absenteeism or time-off-task limitations; (2) mental limitations; (3) monovision limitations; and (4) greater standing and/or walking limitations.  As discussed herein, Plaintiff has failed to establish that the ALJ erred.

### 1.  Absenteeism

Plaintiff has not shown that the ALJ erred by not including absenteeism or time-off-task limitations in Plaintiff's RFC.  In arguing otherwise, Plaintiff contends that the "extraordinary" number of medical and therapy appointments reflected in the record warranted limitations related to absenteeism or time-off-task.  He notes that over a 22-month period (between March 2020 and January 2022), he had more than 70 such appointments, including psychiatry, orthopedist, and physical therapy appointments.  He also asserts that he underwent a major spine surgery during that period of time, which he contends required at least one week of time to recuperate.  At any rate, Plaintiff contends that because he had to attend the 70-plus appointments, he would have been absent from work for at least a portion of 3 days each month.  And he contends such absenteeism would be work-preclusive based on the VE's testimony that Plaintiff would not be able to maintain a job if consistently absent from work more than once a month or off-task more than 10% of the time.  Tr. 63.

Notably, the Eleventh Circuit (albeit in an unpublished opinion) has persuasively rejected the argument Plaintiff makes here, explaining as follows:

> [W]e are unpersuaded by Cherkaoui's argument that the excessive number of medical appointments she attended rendered her disabled. For starters, whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments. The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities. Moreover, nothing in the record indicates that Cherkaoui was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.

*Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (internal citation omitted). District courts in this circuit have likewise persuasively rejected similar arguments. *See, e.g.*, *Sailem v. Kijakazi*, No. 2:21-CV-103, 2023 WL 2564346, at *6 (S.D. Ga. Mar. 1, 2023), *report and recommendation adopted*, 2023 WL 2562782 (S.D. Ga. Mar. 16, 2023) ("The fact Plaintiff had 52 medical appointments over 17 months does not, on its own, constitute evidence of future absenteeism. Instead, any connection between Plaintiff's appointments and future absenteeism is purely speculative as it is based solely on her general medical history." (internal quotation marks and citation omitted)); *Hebert v. Kijakazi*, No. 8:21-CV-295-AEP, 2022 WL 4463593, at *6 (M.D. Fla. Sept. 26, 2022) ("Plaintiff cites no evidence in the record demonstrating that her appointments are of such duration that she would miss an entire work day or that these appointments could not be scheduled outside of the workday in order to avoid excessive absenteeism." (citations omitted)).

Ultimately, as the foregoing cases (and other district court cases in this circuit) demonstrate, the mere fact that Plaintiff attended 70-plus appointments over a 22-month period is

insufficient on its own to demonstrate that the ALJ erred in not including an absenteeism or time-off-task limitation in Plaintiff's RFC.

### 2. Mental Limitations

Plaintiff has failed to establish error with respect to the ALJ's decision to omit mental limitations from Plaintiff's RFC. In evaluating Plaintiff's mental impairments, the ALJ evaluated the paragraph B criteria in connection with steps two and three of the sequential evaluation, and she also conducted a more detailed assessment of the relevant evidence regarding Plaintiff's mental impairments. *See* Tr. 34 (recognizing that the mental RFC assessment requires a more detailed assessment than the paragraph B criteria evaluation at steps two and three); *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) ("The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four." (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

As indicated above, an ALJ must consider the medical severity a claimant's impairments at step two of the sequential evaluation. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019). But step two only involves a "threshold" inquiry. *Id.* at 1265. It simply "'acts as a filter' to weed out claims where there are no severe impairments at all." *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 755 (11th Cir. 2018) (quoting and citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Here, because the ALJ found a severe impairment at step two – albeit no severe mental impairments – she did not "weed out" Plaintiff's claim at step two. Rather, she denied his claim at step five.

Regarding Plaintiff's mental impairment, the ALJ found at step two that Plaintiff's impairment of PTSD "does not cause more than minimal limitation in [Plaintiff's] ability to

perform basic mental work activities and is therefore nonsevere." Tr. 34.  Again, in making this finding, the ALJ considered the four broad functional areas (the paragraph B criteria).  *See Buckwalter*, 5 F.4th at 1324 ("In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria." (citing *Schink*, 935 F.3d at 1269)).  "The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself." *Id.* at 1324-25 (citing 20 C.F.R. § 404.1520a(c)(3)).  "The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning." *Id.* at 1325 (citing 20 C.F.R. § 404.1520a(c)(4)).  Here, as noted above, the ALJ assigned a rating of "none" in two areas and "mild" in the other two areas.  Because the ALJ did not find more than a mild limitation in any area, and because she found the evidence did "not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities," she concluded that Plaintiff's mental impairment is not severe.  Tr. 34.  When the ALJ later assessed Plaintiff's RFC, she did not include any mental limitations in Plaintiff's RFC.

Plaintiff contends that the ALJ erred by not including mental limitations in Plaintiff's RFC despite finding mild limitations in two of the paragraph B criteria.  However, the ALJ's decision in this regard is supported by substantial evidence.  Notably, "persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while" assessing the paragraph B criteria.  *Alvarado v. Kijakazi*, No. 22-CV-60416, 2023 WL 2548424, at *13 (S.D. Fla. Mar. 17, 2023) (quoting *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) and collecting other

cases).[1]  Now, that does not relieve ALJs of the obligation to consider all relevant evidence, all

impairments (both severe and non-severe), and a claimant's condition as a whole when assessing

a claimant's RFC.  *See Buckwalter*, 5 F.4th at 1320; *Schink*, 935 F.3d at 1268-69.  But here, the

ALJ's decision shows that she fulfilled that obligation.

> For starters, the ALJ discussed certain of the relevant evidence at step two:

> [O]n examination the claimant's mood is normal, with no signs of depression or
> mood elevation. There are no signs of hallucinations, delusions, bizarre behavior,
> or other indicators of psychotic process. His thinking is logical, his cognitive
> functioning and fund of knowledge in intact, his memory is intact and he is fully
> oriented. His vocabulary, fund of knowledge and judgment appears intact. The
> claimant was also described as friendly, attentive, with normal speech. His mood
> was normal, with no signs of depression. His cognitive functioning and fund of
> knowledge are intact and age appropriate. His short term and long-term memory
> are intact.

Tr. 34 (internal citations omitted).

> Then, after noting that the RFC requires a more detailed assessment than the paragraph B

criteria, the ALJ evaluated the persuasiveness of the prior administrative findings regarding

Plaintiff's mental condition.  *See* Tr. 34-35.  Like the ALJ, one doctor found a mild impairment in

interacting with others and concentrating, persisting, or maintaining pace (and no impairment in

the other two functional areas).  *See* Tr. 35, 88.  The other consultant assessed a mild limitation in

all four functional areas.  *See* Tr. 35, 99.  The ALJ found the opinions of both consultants to be

persuasive.[2]  Tr. 35.  She explained that their findings were "supported by their review of the

---

[1] The situation may be different when moderate limitations are involved.  *See Buckwalter*, 5 F.4th
at 1325 ("[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to
account for a claimant's *moderate* limitation in the area of concentration, persistence, or pace in a
hypothetical posed to the VE." (citing *Winschel*, 631 F.3d at 1180-81) (emphasis added)).

[2] Plaintiff implies that there is an issue with the ALJ finding no limitation in two of the functional
areas despite finding the opinion of the consultant who assessed a mild limitation in all four
functional areas to be persuasive.  *See* [DE 15] at 7.  However, "the regulations do not require an
ALJ to adopt into the RFC every part of an opinion that he otherwise finds persuasive." *League
v. Comm'r of Soc. Sec.*, No. 2:20-CV-650-SPC-NPM, 2022 WL 1085540, at *6 (M.D. Fla. Feb. 7,

record, including the benign mental examinations," and "consistent with the limited mental health treatment that note normal memory, concentration and the claimant's ability to care for himself." Tr. 35.

The ALJ also later discussed the results of an examination performed by, and opinion provided by, a consultative examiner who evaluated Plaintiff. The ALJ found the examiner's opinion to be persuasive. In addition to evaluating Plaintiff's physical limitations, the ALJ noted the examiner's finding – regarding Plaintiff's mental abilities – that Plaintiff's limited exam indicated that Plaintiff "has the ability to hear and understand normal conversational speech," "can do work-related mental activities involving common understanding and memory," can "sustain concentration and persistence," and is capable of "social interaction and adaptation." Tr. 37, 405. Furthermore, the ALJ considered evidence regarding Plaintiff's daily activities, finding that they suggested Plaintiff "could perform work on a sustained and continuous basis" within the parameters of the RFC that the ALJ assessed. Tr. 37.

Thus, the ALJ's discussion shows that she considered Plaintiff's mental impairments and condition as a whole in conjunction with her assessment of Plaintiff's RFC. Moreover, her decision to omit mental limitations from Plaintiff's RFC is supported by substantial evidence, including, *inter alia*, evidence she referenced regarding benign mental examinations, Plaintiff's daily activities, and Plaintiff's normal memory and concentration, including the consultative examiner's report that Plaintiff can sustain concentration, persistence, and social interaction.

---

2022), *report and recommendation adopted*, 2022 WL 703011 (M.D. Fla. Mar. 9, 2022); *see also Bullard v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-289-T-23MCR, 2020 WL 3668792, at *6 n.10 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 3640477 (M.D. Fla. July 6, 2020) ("[T]he ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the final responsibility for assessing the RFC rests with the ALJ.").

Therefore, Plaintiff has failed to establish that the ALJ erred in excluding mental limitations from Plaintiff's RFC.

### 3. Monovision

The ALJ did not err by not including limitations related to Plaintiff's alleged monovision. In arguing that the ALJ should have assessed such limitations, Plaintiff solely points to a report prepared by a consultative examiner who was retained to evaluate Plaintiff based on his allegations of PTSD and back disorders.  *See* Tr. 404-05.  Plaintiff notes that the report indicates Plaintiff "has mono vision and has had LASIK" and that he has 20/30 vision in his right eye (uncorrected) and 20/100 vision in his left eye (uncorrected).  Tr. 404.  Based on these notations alone, and without pointing to anything else in the record regarding Plaintiff's alleged vision issues, Plaintiff contends that the ALJ (and the consultative examiner) should have considered Plaintiff's monovision. Defendant responds that the record contains no evidence of visual limitations, that Plaintiff continued to work for years even with poor vision (meaning that his vision did not prevent him from working), and that Plaintiff did not assert he had any vision impairments at the hearing before the ALJ even though he was asked about impairments that affected his ability to work.

I agree with Defendant.  Plaintiffs fails to explain – or point to any law showing – why the ALJ was required to assess his alleged monovision solely based on one brief indication that he has such a condition.  Aside from the short notation in the consultative examiner's report, the only other part of the record that appears to mention "monovision" is Plaintiff's attorney's request for review of the ALJ's decision by the Appeals Council.  *See* Tr. 298-302.[3]  Moreover, as Defendant contends, Plaintiff never complained of any vision issues at the hearing before the ALJ when

---

[3] The record also mentions vision problems generally in a few other locations but provides no description or summary of any specific vision issues.

discussing his impairments.  *Cf. Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 837–38 (11th Cir. 2018) (finding ALJ has no obligation to consider impairment not alleged in application for benefits or at hearing); *Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x 670, 671 (11th Cir. 2017) (same).  Additionally, Plaintiff apparently overlooks that the consultative examiner's medical source statement opined that Plaintiff has the ability to perform activities involving seeing (among other things).  Tr. 405.  Notably, the ALJ specifically discussed the consultative examiner's opinion, finding it to be persuasive.  Tr. 37.  Thus, Plaintiff has failed to demonstrate that the ALJ erred by not assessing vision limitations.

### 4.  Standing/Walking

As noted above, the ALJ found that Plaintiff is capable of performing "light work" with certain additional limitations.  Plaintiff, however, contends that in doing so, the ALJ "grossly exaggerates" Plaintiff's ability to perform the standing and walking requirements of light work.[4] As discussed herein, the ALJ's decision was supported by substantial evidence, and Plaintiff has not demonstrated error.

It is evident from the ALJ's decision that she considered Plaintiff's medical condition as a whole, including his back condition and his ability to stand and walk, in finding that Plaintiff could perform the standing and walking requirements of light work.  Initially, the ALJ discussed Plaintiff's complaints of back pain and his complaints of experiencing pain from standing and walking.  Tr. 36.  While she found that Plaintiff's impairments could reasonably be expected to cause his symptoms, she found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 36.

---

[4] "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10.

The ALJ then proceeded to discuss the medical evidence and other evidence. For instance, she discussed the results of an MRI of the lumbar spine, as well as an examination of the lumbar spine, noting that Plaintiff demonstrated a mildly antalgic gate. Tr. 36. While also recognizing that Plaintiff had some tenderness in the lumbar paraspinal muscles, the ALJ noted that Plaintiff's range of motion in the lumbar spine was within functional limits. Tr. 36. Moreover, the ALJ explained that epidural injections and physical therapy helped Plaintiff with his pain and that the record indicates his pain had been stable. Tr. 36. Additionally, the ALJ discussed Plaintiff's daily activities, noting that he is able to perform "a wide array of activities," including walking, yoga, and refereeing basketball and softball games. Tr. 36-37. The ALJ found that Plaintiff's level of activity suggests that he is capable of performing work "on a sustained and continuous basis within the assessed parameters" (i.e., the RFC that the ALJ assessed). Tr. 37.

Further, in assessing Plaintiff's RFC, the ALJ expressly discussed and evaluated the opinion evidence of record. First, the ALJ discussed the consultative examiner's opinion, noting that the examiner found Plaintiff is able to perform activities involving standing and walking (among other things). Tr. 37. The ALJ also noted that Plaintiff's physical examination (with the consultative examiner) was within normal limits, that the examiner indicated no gross limits to Plaintiff's activities, that the examiner observed normal gait and station without any evidence of gross motor dysfunction, and that Plaintiff was able to perform gait, station, heel to toe, tandem walking, and knee squats with minimal difficulty. Tr. 36-37. The ALJ found the consultative examiner's opinion to be persuasive. Tr. 37. The ALJ also examined the prior administrative medical findings of two doctors. She found that the opinion of one of the doctors, who limited Plaintiff to light work, was persuasive, but the ALJ discounted the persuasiveness of the opinion from the other doctor, who only limited Plaintiff to medium work. Tr. 37. In other words, the

ALJ found that Plaintiff was more limited. Ultimately, based on her evaluation of all of the evidence, the ALJ found that Plaintiff could perform light work (with the additional limitations she included). *See* Tr. 38.

The ALJ's decision plainly shows that her determination that Plaintiff is capable of performing light work is supported by substantial evidence. In arguing otherwise, Plaintiff primarily relies upon medical evidence from Berkower Pain & Spine Rehabilitation, which can be found in Exhibit 2F of the record (Tr. 328-82). Plaintiff also points to records of a November 2021 procedure he underwent (Exhibit 11F, Tr. 691) and notes that he attended around 40 sessions of physical therapy. Significantly, though, the ALJ's decision shows that she considered Exhibits 2F and 11F, as well as Plaintiff's physical therapy. *See* Tr. 36-38. And while Plaintiff does point to evidence that perhaps may have allowed a reasonable person to conclude that Plaintiff is more limited, Plaintiff has failed to show that the ALJ was unreasonable in concluding as she did.[5] The ALJ evidently supported her decision with more than adequate evidence, including, *inter alia*, the opinion of the consultative examiner, certain prior administrative medical findings, and evidence of Plaintiff's activities of daily living. Thus, the ALJ's decision to not include greater standing and walking limitations is supported by substantial evidence, and under the applicable standard of review, this Court cannot reweigh the evidence or substitute its judgment for the ALJ's judgment.

---

[5] Importantly, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; []he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

**<u>CONCLUSION</u>**

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion [DE 15], **GRANT** Defendant's Motion [DE 17], and **AFFIRM** the final decision of the Commissioner.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 15th day of September 2023.

Jared M. Strauss
United States Magistrate Judge